IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHERRY BUXTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. CIV-21-691-R |
| | ) |
| UNITED OF OMAHA LIFE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant United of Omaha Life Insurance Company's (United) Motion for Summary Judgment and Brief in Support (Doc. No. 24). Incorporated by reference into the Motion for Summary Judgment [*See* Doc. No. 30 at 4] is Defendant's Motion to Strike Plaintiff's Affidavit (Doc. No. 31). The parties have fully briefed both matters, and they are ripe for decision. For the reasons below, the Court DENIES the Motion for Summary Judgment [Doc. No. 24] regarding Plaintiff's breach of contract and bad faith claims and GRANTS summary judgment regarding Plaintiff's request for punitive damages. Additionally, the Court DENIES Defendant's Motion to Strike Plaintiff's Affidavit [Doc. No. 31].

**I. Background**

Plaintiff Sherry Buxton's action arises from Defendant's issuance of a life insurance policy to Plaintiff's spouse, Garrison Buxton (Insured[1]), and its rescinding of that policy after Mr. Buxton's death. On July 13, 2017, Mr. Buxton submitted a telephonic application for a non-tobacco $100,000 policy. *See generally* Doc. Nos. 24-4, 29-3. The policy did not require Mr. Buxton to undergo a physical. Doc. No. 29-3 at 3. During his telephonic application, the Insured first talked with a man named Adam at United's home office. *See generally id.* During that initial conversation, he informed the agent that he did not smoke tobacco, had been exposed to agent orange in military service, and had cancer. *Id.* Adam then forwarded his call to an insurance agent licensed in Oklahoma named Mr. Dunkinsel. *Id.* at 4. During Mr. Buxton's second call with Mr. Dunkinsel, he confirmed that he was seeking a non-tobacco policy. Doc. No. 24-4 at 3. He answered "correct" to an inquiry as to whether he had

> ever been diagnosed . . . or treated for any of the following, which include bipolar disorder, schizophrenia, stroke, congestive heart failure, heart disease, valvular heart disease, surgical repair/replacement, leukemia, alcohol or drug abuse, liver disease, melanoma or other cancer, chronic kidney disease or failure, Down's syndrome, automatic disease or dementia, chronic obstructive or COPD? You said no to all of those?

*Id.* at 5.

United reduced these phone calls to a written application form that same day. *See* Doc. No. 24-5. The United agent marked the "No" box on the form after the question, "In

---

[1] For the sake of brevity and to avoid repetition, the Court will utilize the term "Insured" throughout this order to refer to Mr. Buxton.

the past 12 months have you used any form of tobacco?" *Id*. at 1. Mr. Dunkinsel also marked the "No" box after Question Five, which said, "Have you received treatment for, or been diagnosed by a member of the medical profession for any of the following in the past three years? . . . Melanoma or other Cancer". *Id*. Mr. Buxton then "voice signed" the document and agreed, "I represent that any and all answers to the questions in this application are true and complete to the best of my knowledge or belief . . . ." *Id*. at 2.

On July 22, 2017, United asked the Insured to fill out a "Cancer Questionnaire" before it issued its policy. *See* Doc. Nos. 24 at 13 ¶ 15; 24-7. Mr. Buxton marked "Yes" to the question, "Have you ever been diagnosed with any type of cancer by a licensed member of the medical profession?" Doc. No. 24-7. He further wrote: "Prostate cancer. Bracy therapy 10.2012. and Radiation Follow on. Follow up showed NO Signs of Cancer" (capitalizations in the original). *Id*. Mr. Buxton also indicated his "last cancer check up" was on "4.2013" *Id*. He signed and dated the questionnaire on July 27, 2017. *Id*. That same day, Mr. Buxton physically re-signed his application, which contained all the same information provided in his July 13, 2017 application. *See* Doc. No. 24-8.

Based on the application and questionnaire, United issued the policy on August 9, 2017. Doc. No. 24-9. The policy included an incontestability provision which stated:

> . . . when permitted by applicable state law, this policy will be incontestable after it has been in force during the insured's lifetime for two years from the issue date. . .
>
> \* \* \*
>
> Any contest will be based on the related application and will be material to the risk we assumed.

*Id*. at 10.

On July 17, 2018, approximately one year after applying for and being issued the insurance policy, Mr. Buxton died of acute coronary syndrome and coronary artery disease. Doc. No. 24-10. Plaintiff submitted a claim to United. Doc. No. 24-11. On September 21, 2018, United informed Mrs. Buxton that it would be obtaining copies of his medical records from the Oklahoma City Veterans Affairs Healthcare System (OKCVA) and reviewing them before deciding her claim. Doc. No. 24-12.

After reviewing the records, Defendant concluded that the Insured had misrepresented his tobacco use and cancer treatment status. Doc. No. 24-17. United never confirmed these conclusions with either Plaintiff or OKCVA healthcare providers during its investigation. Doc. No. 29-5 at 14.

> Based on information in the records from the Oklahoma City Veterans Medical Center, the tobacco question should have been answered "yes". Records from 7/26/17 indicate he was a smoker, and he was prescribed the nicotine patch. As of 8/3/17 he was still using the patch. Had we known of this information, we would not have offered a non tobacco premium class. In my opinion, Question 5 should have been answered "yes" for "melanoma or other cancer". In the past three years prior to the application he had used ADT and Leuprolide as treatment for prostate cancer. Had we known of this information the application would have been declined.

Doc. No. 24-17 at 1. United subsequently sent Mrs. Buxton a rescission letter, dated January 3, 2019, and refunded Mr. Buxton's premium payments. Doc. No. 24-19. Plaintiff then brought this action, alleging breach of contract and bad faith for United's failure to pay on the life insurance policy.

**a. Mr. Buxton's Medical History**

The medical records and statements the parties submitted to the Court in support of their positions set forth Mr. Buxton's medical history in the relevant one-year (tobacco use

4

history) and three-year (history of cancer) periods before the insurance application. *See generally* Doc. Nos. 24-1, 24-2. For clarity, the Court first examines the records from the year prior to the insurance application regarding Mr. Buxton's history of tobacco use. It then addresses the cancer records from the three years before the application.

The records regarding whether Mr. Buxton used tobacco during the year before his application are in tension. On November 8, 2016, Mr. Buxton called the OKCVA asking, according to the notes, for "Nicotine patches to stop smoking. Offered smoking cessation classes and Veteran declined . . . ." Doc. No. 24-2 at 1. However, in a "Psychiatry Note" dated April 6, 2017, a "Tobacco use screen" indicated that Mr. Buxton "report[ed] not using any tobacco product in years = 10". Doc. No. 24-1 at 67, 74. "Social History" notes from the Insured's treating physician assistant, Chris Greenhagen, PA-C, dated from June 29, 2017, March 21, 2017, February 24, 2017, February 8, 2017, January 25, 2017, January 19, 2017, December 27, 2016, June 20, 2016, October 5, 2015, September 28, 2015, July 27, 2015, March 31, 2015, March 17, 2015, September 26, 2014, September 8, 2014, July 21, 2014, and July 18, 2014, all repeat the same entry:

> Tobacco use Are you an other tobacco user? **No**, Are you a **former smoker**, How long since you quit smoking? **less than 1 year**, How many years did you smoke? **20-30 years**, Have you had a relapse? **no**, Do you use other tobacco products? **No**.

Doc. No. 50-1 - (emphasis in the original). On July 27, 2017, an OKCVA "Primary Care Note" labeled Mr. Buxton a "SMOKER" (emphasis in the original) [*Id*. at 45], prescribed nicotine patches and advised: "*DO NOT SMOKE WHILE USING*" (emphasis in the original) [*Id*. at 47], stated in his "HISTORY" that he was a SMOKER (emphasis in the

5

original) [*Id*. at 48], and in the "Progress Notes" stated in "Patient Education" "2. SMOKER: NICOTINE PATCHES ORDERED" (emphasis in the original) [*Id*. at 49]. Plaintiff has additionally submitted an affidavit[2] in which she concurred with the "Psychiatry Note" stating that Mr. Buxton had quit smoking many years before applying for the life insurance policy. Doc. No. 29-2 at 2 ¶ 5. She further explained his use of nicotine patches, claiming, "[Mr. Buxton] suffered from PTSD due to . . . Vietnam and the nicotine patches made him feel less stress and anxiety . . . ." *Id*. at 2 ¶ 9.

As to the records about Mr. Buxton's history of cancer, on October 29, 2014, an OKCVA "Progress Note" stated that Mr. Buxton presented himself for "PROSTATE

---

[2] Defendant asks the Court to exclude Mrs. Buxton's affidavit because it allegedly "(1) improperly attempts to convey untimely and unfounded expert testimony; (2) has no foundation and is not based on personal knowledge; (3) is directly contrary to Plaintiff's prior discovery responses; (4) contains demonstrably false testimony." Doc. No. 31 at 1. Specifically, addressing the alleged improper and untimely expert testimony, United objects to Plaintiff's statements in the affidavit that state Mr. Buxton used nicotine patches to self-medicate PTSD and that his cancer was cured in 2012 or 2013. *Id*. at 2. Having examined the affidavit, the Court finds these objections misplaced. Mrs. Buxton is merely stating her observations, having lived with Mr. Buxton for nearly fourteen years and, during that time, observing the conversations about his prostate cancer between Mr. Buxton and his physicians. For the same reasons, the Court can dismiss Defendant's objection in the second argument of its motion to strike.

Arguments (3) and (4) are also faulty. In argument (3), United claims Mrs. Buxton's statement that she "believes Mr. Buxton quit smoking" [*Id*. at 6] directly contradicts the statement in her affidavit that states, "Mr. Buxton quit smoking many years in the past." Doc. No. 29-2 at 2 ¶ 5. The Court does not see these statements as necessarily contradictory. Finally, Defendant argues the Court should strike Plaintiff's affidavit because Mrs. Buxton asserts that "[n]obody employed by United of Omaha ever contacted me to discuss whether [Mr. Buxton] was using any form of tobacco . . . [or] what Mr. Buxton thought about previously having cancer or being treated for cancer" [*Id*. at 4 ¶¶ 28–29]. Defendant claims this statement contradicts the language in its rescission letter offering to review any questions or information Plaintiff wanted it to consider. Doc. No. 31 at 7. The language Defendant cites is from a letter rescinding the insurance contract—the origin of the current dispute. United does not in this letter ask Mrs. Buxton for any information. Instead, it merely offers to consider information if she should provide it. Such an offer does not contradict Mrs. Buxton's affidavit, and consequently, the Court rejects Defendant's fourth argument and the motion to strike in its entirety.

United additionally raised two novel arguments in its reply to Plaintiff's response to its motion to strike. *See generally* Doc. No. 37. A party that presents arguments for the first time in a reply brief waives those arguments. *See Hill v. Kemp*, 478 F.3d 1236, 1250–51 (10th Cir. 2007). However, even if the Court considers these two arguments, they are meritless. The first argument posits that her current affidavit must be barred because Plaintiff did not effectively respond to an interrogatory. Doc. No. 37 at 2–3. Defendant cites no authority supporting this position. *Id*. The second argument claims that the medical record contradicts Mrs. Buxton's claim that Mr. Buxton used nicotine patches to treat his PTSD. *Id*. at 3–4. However, Plaintiff never claims that Mr. Buxton was *prescribed* the nicotine patches for PTSD. She claims he *used* them for this purpose. Thus, the medical records do not contradict the affidavit. The Court, having considered all of Defendant's arguments in support of its Motion to Strike Plaintiff's Affidavit [Doc. No. 31], DENIES that motion and considers the affidavit as part of the record in its entirety.

CANCER" (emphasis in the original) and that "NO EDUCATION NEEDED PT KNOWS PROCEDURE WELL" (emphasis in the original). Doc. No. 24-2 at 78. The note also states that the Insured received a Leuprolide injection into his right upper arm. *Id*. In a "Primary Care Note", dated April 8, 2015, Mr. Buxton presented himself for "Health maintenance" including for "PROSTATE CA". *Id*. at 67 (emphasis in the original). The same note also stated "Hypertrophy (Benign) of Prostate" and an action plan to "PROSTATE CA: MONITOR". *Id*. at 70–71 (emphasis in the original). A "Psychiatry Note" from November 17, 2015, states that Mr. Buxton had "Prostate Ca.". *Id*. at 46. The Insured's physician, Dr. Roger W. Timm, also provided United with a "Physician's Statement" on September 9, 2018, that informed Defendant that he had treated Mr. Buxton for "Prostate Cancer" for "6 ½ yrs" from "3/21/12" and that his cancer was "in remission". Doc. No. 24-3. On June 21, 2019, Dr. Timm also wrote a letter stating:

> [Mr. Buxton] underwent IMRT (Intensity Modulated Radiation Therapy) with Brachytherapy Boost as his primary treatment. He was also started on adjuvant LHRHa therapy. That was started in June 2012 and ended in April 2015 and he remained disease free during this time and up until the time of his death in July 2018.

Doc. No. 29-8. In her affidavit, Mrs. Buxton states that Dr. Timm additionally informed her and Mr. Buxton that the Insured's "cancer was gone and there was no more cancer. This happened in 2012 or 2013" and that "the medications he would take after 2013 were designed to keep his cancer from coming back." Doc. No. 29-2 at 2–3 ¶¶ 12, 16. Plaintiff further claims that Mr. Buxton believed that "his cancer was cured in 2012 or 2013." *Id*. at 3 ¶ 23.

7

Defendant moves for summary judgment, asserting that there is no dispute in the case's material facts and that it had the right under the policy language and Okla. Stat. tit. 36 § 3609 (1990) to rescind the insurance contract based on the above medical history. It further argues that Plaintiff has no claim for bad faith because there is a genuine dispute in this case, namely whether Mr. Buxton intended to deceive United by misrepresenting his tobacco use and cancer treatment in the applicable periods. Defendant further contends Plaintiff cannot show it conducted an inadequate investigation of her claim in support of her bad faith cause of action. Finally, United argues that Mrs. Buxton lacks the evidence to warrant punitive damages. Plaintiff counters that Defendant cannot prove the requisite intent to deceive under Oklahoma law justifying rescission. She further argues case law points to allowing a jury to decide her bad faith and punitive damages claims. Having evaluated the facts and the authority applicable to the motion for summary judgment, the Court agrees with Plaintiff regarding her breach of contract and bad faith claims and with Defendant regarding Mrs. Buxton's request for punitive damages.

## II. Summary Judgment Standard

Summary judgment is properly granted if the movant shows that no genuine dispute exists as to any material fact and that the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it affects the disposition of the substantive claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion and of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that demonstrate the absence of a

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). If the movant satisfactorily demonstrates an absence of a genuine issue of material fact concerning a dispositive issue for which the non-moving party will bear the burden of proof at trial, the non-movant must then "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id*. at 324 (internal quotation marks omitted). When considering a motion for summary judgment, a court must "'view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.'" *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000) (quotation marks and citation omitted).

### III. Analysis

#### a. Breach of Contract Claim

"Under Okla. Stat. tit. 36 § 3609 (1990), an insurer properly may rescind an insurance policy "when the application contains a misrepresentation that (1) is fraudulent; (2) is material to the insurance company's acceptance of the risk; or (3) induced the insurer to issue the policy where it would not have done so had it known the true facts." *Vining ex rel. Vining v. Enter. Fin. Grp.*, 148 F.3d 1206, 1215 (10th Cir. 1998). A finding of an insured's intent to deceive is required to rescind an insurance contract in Oklahoma. *Id*. "[T]he insurer bears the burden of proof to show not only that the statements were untrue, but also that the misrepresentations were either fraudulent, material to the risks or hazards assumed by the insurer, and, in good faith, the insurer would not have issued the policy, or covered the hazard if the true facts had been known in the application." *Claborn v. Washington National Ins. Co.*, 910 P.2d 1046, 1049 (Okla. 1996). The insurer must prove

9

intent to deceive by clear and convincing evidence. *Scottsdale Ins. Co. v. Tolliver*, 261 F. App'x 153, 162 (10th Cir. Mar. 11, 2008). Furthermore,

> Whether a life insurance policy would have been issued had true answers been given in the application cannot be left to the determination of the insurer after the death of the insured. The matter is not to be settled by the mere pronouncement of the company after the death has occurred, but the matter misrepresented must be of the character which the court could say would reasonably affect the insurer's judgment as to the matter of the risk and the amount of the premium.

*Claborn*, 910 P.2d at 1050 (citing 29 Am. Jur. *Insurance*, § 701).

The Court finds that Defendant has failed to establish it is entitled to summary judgment on Plaintiff's breach of contract claim. "Where the evidence is conflicting as to either insured's state of health at the time of the application, or the falsity of the insured's statements in the application process, or the intent of the insured, the issues are properly tendered to the jury for resolution." *Claborn.*, 910 P.2d at 1049 (citing *Brunson v. Mid-Western Life Ins. Co.*, 547 P.2d 970 (Okla. 1976) and *Atlas Life Ins. Co. v. Eastman*, 320 P.2d 397 (Okla. 1957)). The Court finds there are material factual disputes as to whether Mr. Buxton used tobacco in the year before applying for his life insurance policy and his knowledge of whether his ADT and Leuprolide treatments were preventative care or cancer treatments.

### i. Tobacco Use

Defendant claims that it is clear from the medical records that Mr. Buxton used tobacco the year before applying for his policy and argues it was entitled to rescind the policy under § 3609. *See* Doc. No. 24 19–21. In support of its position, United points to the evidence in the medical records that on November 8, 2016, the Insured called the

OKCVA asking for "Nicotine patches to stop smoking. Offered smoking cessation classes and Veteran declined . . . ." Doc. No. 24-2 at 1. Defendant also relies heavily on a July 26, 2017 "Primary Care Note" that labeled Mr. Buxton a "SMOKER" (emphasis in the original) [Doc. 24-1 at 45], prescribed nicotine patches and advised: "*DO NOT SMOKE WHILE USING*" (emphasis in the original) [Id. at 47], stated in his "HISTORY" that he was a SMOKER (emphasis in the original) [Id. at 48], and in the "Progress Notes" stated in "Patient Education" "2. SMOKER: NICOTINE PATCHES ORDERED" (emphasis in the original) [Id. at 49].

However, in relying on these records, United ignored contradictory medical records. In the "Psychiatry Note" dated April 6, 2017, Mr. Buxton indicated in a "Tobacco use screen" that he had "not us[ed] any tobacco product in years = 10". Doc. No. 24-1 at 67, 74. The "Social History" notes from Mr. Greenhagen, PA-C, dated from July 18, 2014, to June 6, 2017, repeat a duplicate entry:

> Tobacco use Are you an other tobacco user? **No**, Are you a **former smoker**, How long since you quit smoking? **less than 1 year**, How many years did you smoke? **20-30 years**, Have you had a relapse? **No**, Do you use other tobacco products? **No**.

Doc. No. 50-1 at 1-46 (emphasis in original). These "Social History" notes, when read to Mrs. Buxton's benefit, tend to show that Mr. Buxton may have quit smoking sometime before 2014.

Defendant cites *Jackson v. Farmers New World Life Ins. Co.*, No. CIV-08-384-SPS, 2010 WL 1253523 (E.D. Okla. Mar. 24, 2010) in support of its position. However, *Jackson* is distinguishable. In *Jackson*, the decedent claimed he did not use tobacco for five years

11

before his application. *Id*. at * 2. However, evidence, including a statement from that case's plaintiff, showed that the insured smoked at least three cigarettes a day before and after he applied for his life insurance policy. *Id*. at *3. Here, the evidence that Mr. Buxton used tobacco products contradicts other evidence in the OKCVA medical records. Some records label the Insured as a smoker seeking nicotine patches to quit, while others state that he had not used tobacco products in years. Furthermore, Plaintiff has provided evidence that Mr. Buxton sought nicotine patches to self-medicate trauma he suffered in Vietnam, not to quit an active tobacco habit.

At the summary judgment stage, the Court must construe the evidence and inferences in the light most favorable to the non-moving party. The record before the Court contains disputes as to material facts regarding whether Mr. Buxton had smoked in the year before his insurance application and whether he intended to deceive United when he represented in his application that he was not a smoker. Therefore, the Court finds Defendant has failed in its burden under Oklahoma law to demonstrate clear and convincing evidence that the Insured intended to deceive by claiming that he was not a smoker when he submitted his insurance application.

### ii. Cancer Treatment

United's second theory in support of its right to rescind Mr. Buxton's policy relies on evidence that the Insured was treated for cancer in the applicable three-year period and intentionally misrepresented his history of cancer treatment when he applied for insurance. *See* Doc. No. 24 at 21–23. There is no dispute that in the three years before his insurance application, Mr. Buxton received "adjuvant LHRHa therapy" for prostate cancer. Doc. No.

29-8. In this context, "[a]djuvant therapy is often used after primary treatments . . . to lessen the chance of [] cancer coming back." Mayo Clinic Staff, *Adjuvant therapy: Treatment to keep cancer from returning*, Mayoclinic.org.[3] The question for the Court then is two-fold. (1) has United demonstrated with clear and convincing evidence that Mr. Buxton misrepresented his cancer treatment by failing to claim his preventative care as a cancer treatment when he answered Question 5 on his application "No"; and, if so, (2) did the Insured intend to deceive when he made this alleged misrepresentation. The Court finds that there are genuine disputes as to material fact regarding both questions.

Based on the record before the Court, answering the first question in this inquiry is impossible. Neither party has submitted expert evidence that explains to the Court whether adjuvant care should be considered a treatment for cancer in the context of Question 5. Regardless, the Court need not answer this question to deny summary judgment in this case because United has failed to prove with clear and convincing evidence that Mr. Buxton intended to deceive when he submitted that he had not been treated for cancer in the applicable three-year period.

Defendant relies on the medical records showing the Insured received preventative treatments, and it inferred an intent to deceive from those records. However, this is not a necessarily fair inference given what United knew about Mr. Buxton when it agreed to insure him. Mr. Buxton informed Defendant's agent on the phone that he had cancer related to his exposure to agent orange during the Vietnam War. *See* Doc. No. 29-3 at 3. The

---

[3] Available at https://www.mayoclinic.org/diseases-conditions/cancer/in-depth/adjuvant-therapy/art-20046687 (last accessed July 15, 2022).

Insured also filled out a "Cancer Questionnaire" in which he admitted to having received cancer treatment. Doc. No. 24-7. Dr. Timm noted in his "Physician Statement" [Doc. No. 24-3] and his letter [Doc. No. 29-8] that the Insured's cancer was in remission. Furthermore, Leuprolide injections, as stated in Dr. Timm's letter [Doc. No. 29-8], were a preventative measure, making it entirely plausible, when the evidence is read in Mrs. Buxton's favor, that Mr. Buxton did not believe he had received cancer treatment since 2013. Plaintiff's affidavit also supports such a position. Doc. No. 29-2 at 3 ¶ 23.

Taking this evidence in the light most favorable to Plaintiff, as required on summary judgment, the Court finds that United has not met its burden of establishing with clear and convincing evidence that Mr. Buxton intended to deceive when he stated in his application and supplemental cancer screening form that he was not treated for cancer in the applicable period. Consequently, the Court denies summary judgment on Defendant's second theory justifying rescission. Additionally, because the evidence in the record does not prove with clear and convincing evidence that Mr. Buxton intended to deceive United under either of its theories for rescinding the insurance contract, the Court denies Defendant's motion for summary judgment regarding Plaintiff's breach of contract claim.

**b. Bad Faith**

Defendant also seeks summary judgment on Plaintiff's bad faith claim. Under Oklahoma law, "an insurer has an implied duty to deal fairly and act in good faith with its insured and [a] violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought." *Christian v. Am. Home Assurance Co.*, 577 P.2d 899, 904 (Okla. 1977). In its Motion for Summary Judgment, Defendant

argues Plaintiff should be barred from seeking to hold it liable for bad faith because it rescinded Mr. Buxton's policy based on a legitimate dispute and that it conducted a reasonable investigation. Doc. No. 24 at 25–31.

Here, there are legitimate disputes regarding Mr. Buxton's history of tobacco use and cancer treatment, which a jury could find in favor of United. However, the existence of a legitimate dispute does not, by itself, resolve a bad faith claim. Instead, "it shifts the burden to the insured to present additional evidence of bad faith." *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 891 (10th Cir. 2006) (applying Oklahoma law). "Most commonly, the insured asserts an insurer's failure to conduct an investigation reasonably appropriate under the circumstances." *Id*. (quotation marks and citation omitted). When seeking to prove bad faith based on an insurer's failure to conduct a reasonable investigation into the claim, a plaintiff must present evidence that "(1) the manner of Defendant's investigation hints at a sham defense or otherwise suggests that material facts were overlooked, or (2) that Defendant intentionally disregarded undisputed facts supporting the insured's claim." *Id*. (quoting *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1442 (10th Cir. 1993) (applying Oklahoma law)). When evaluating Plaintiff's evidence, the Court keeps in mind the Oklahoma Supreme Court's guidance that "the essence of the intentional tort of bad faith with regard to the insurance industry is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy . . . ." *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981).

In this case, Plaintiff has provided evidence demonstrating that United overlooked crucial evidence that might have been decisive in her claim. Applying the *Sims* analysis,

15

Plaintiff has presented adequate evidence to submit to a jury that Defendant, in its examination of Mr. Buxton's medical records, credited evidence in favor of rescinding the insurance policy over equally valid evidence that tended to show Mr. Buxton had not used tobacco products for years and that his cancer was in remission. "When there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of an insurer's conduct [in a bad faith claim], then what is reasonable is always a question to be determined [by a jury] . . . ." *Peters v. Am. Income Life Ins.*, 77 P.3d 1090, 1097 (Okla. 2002). Plaintiff has shown that a jury could reasonably infer that United acted in bad faith when investigating her claim. Consequently, the Court denies summary judgment on Plaintiff's bad faith cause of action.

### c. Punitive Damages

Finally, Defendant seeks summary judgment on Plaintiff's request for punitive damages. In Oklahoma, even where there is evidence to support the recovery of actual damages in a bad faith action against an insurer, submission of the issue of punitive damages to a jury may be improper. *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 614–15 (10th Cir. 1994) (citing *McLaughlin v. National Benefit Life. Ins. Co.*, 772 P.2d 383, 385, 387, 389 (Okla. 1988)). An insurer's breach of the duty of good faith and fair dealing does not automatically mean it is liable for punitive damages. *Id*. at 612 (*City Nat'l Bank & Trust Co. v. Jackson Nat'l Life Ins.*, 804 P.2d 463, 468 (Okla. App. 1990). Under Oklahoma law, punitive damages may be awarded in two circumstances: (1) where the jury finds by clear and convincing evidence that the defendant has been guilty of "reckless disregard for the rights of others;" or (2) where the jury finds by clear and convincing evidence that the

defendant has acted "intentionally and with malice towards others." Okla. Stat. tit. 23, § 9.1. When reviewing claims for punitive damages at the summary judgment stage, the Court's role is to "determine whether any competent evidence exists which would warrant submission [of] the question of punitive damages to the jury." *Estrada v. Port City Properties, Inc.*, 258 P.3d 495, 504 (Okla. 2011).

To avoid summary judgment, Plaintiff must present evidence from which a reasonable jury could find it highly probable that Defendant was either aware or did not care that there was a substantial and unnecessary risk that its conduct would cause serious injury. *Hellard v. Mid Century Ins. Co.*, No. 19-CV-00043-GKF-CDL, 2020 WL 6587658, at *7 (N.D. Okla. Nov. 10, 2020). The Court finds that the evidence fails considering the clear and convincing standard. Given the weight of the evidence that points toward Mr. Buxton using tobacco in the year before he applied for his policy, no reasonable jury could find Defendant was reckless in its decision to rescind based on this possible intentional misrepresentation. The Court, therefore, GRANTS Defendant's Motion for Summary Judgment regarding Plaintiff's request for punitive damages.

## IV. Conclusion

For the reasons above, the Court DENIES the Motion for Summary Judgment [Doc. No. 24] regarding Plaintiff's breach of contract and bad faith claims and GRANTS summary judgment regarding Plaintiff's request for punitive damages. Additionally, the Court DENIES Defendant's Motion to Strike Plaintiff's Affidavit [Doc. No. 31].

IT IS SO ORDERED this 26th day of July 2022.

*[signature: David L. Russell]*

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE